UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| RAYMOND STEWART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 2:15-cv-22-WTL-DKL |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Raymond Stewart requests judicial review of the final decision of Defendant Carolyn Colvin, Commissioner of the Social Security Administration ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court rules as follows.

## I. PROCEDURAL HISTORY

Stewart filed his applications for DIB and SSI in February 2012, alleging disability beginning on January 1, 2009, a date that he later amended to February 26, 2012. His application was denied initially and upon reconsideration, whereupon he requested and was granted a hearing before an administrative law judge ("ALJ"). Stewart was represented by counsel at the video hearing, which was held on July 17, 2012, before ALJ Henry Kramzyk. Stewart and a vocational expert testified at the hearing. Thereafter, on November 1, 2013, the ALJ rendered his decision in which he concluded that Stewart was not disabled as defined by the Act. The Appeals Council denied Stewart's request for review, after which Stewart filed this action.

## II. EVIDENCE OF RECORD

The relevant evidence of record is aptly set forth in Stewart's brief and need not be repeated here.

## III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b).[1]

At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not

---

[1] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

disabled.  20 C.F.R. ▪ 404.1520(f).  At step five, if the claimant can perform any other work in the national economy, he is not disabled.  20 C.F.R. ▪ 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred."  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this court may not reweigh the evidence or substitute its judgment for that of the ALJ.  *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).  The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability.  *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).  In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion."  *Id.*

## IV.  THE ALJ'S DECISION

The ALJ found at step one that Stewart had not engaged in substantial gainful activity since his amended alleged onset date of February 26, 2012.  At steps two and three, the ALJ found that Stewart had the severe impairments of degenerative disc disease of the lumbar spine, congenital spinal stenosis, obesity, diabetes, status-post right shoulder surgery, mild osteoarthritis of the bilateral feet, and depression, Record at 16, but that his impairments, singly or in combination, did not meet or medically equal a listed impairment.  At step four, the ALJ concluded that Stewart had the residual functional capacity to perform light work with the following postural and environmental limitations:

3

> [he] is limited to occasional use of ramps and stairs, balancing, stooping, crouching, kneeling, and crawling, but never any use of ladders, ropes, or scaffolds. [He] is limited to occasional use of the right dominant upper extremity for overhead reaching. [He] is able to understand, remember, and carry out short, simple, and repetitive instructions. [He] is able to sustain attention and concentration for two-hour periods at a time and for eight hours in the workday on short, simple, repetitive instructions. [He] is able to use judgment in making work decisions related to short, simple, repetitive instructions. [He] requires an occupation with only occasional co-worker contact and supervision. [He] requires an occupation with set routine[s] and procedures, and few changes during the workday. [He] requires an occupation with no contact with the public and no fast-paced production work. [He] is able to maintain regular attendance and be punctual within customary tolerances. [He] is able to perform activities within a schedule. [He] must avoid concentrated exposure to wetness, including wet slippery uneven surfaces. [He] must avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery.

*Id.* at 20. Given this residual functional capacity ("RFC"), the ALJ determined that Stewart was unable to perform any of his past relevant work. At step 5, the ALJ determined that Stewart was able to perform representative occupations such as marker, routing clerk, and mail clerk, and that those jobs existed in significant numbers in the national economy. Accordingly, the ALJ concluded that Stewart was not disabled as defined by the Act.

## V. DISCUSSION

Stewart argues that the ALJ erred in several respects. Each of his arguments is addressed, in turn, below.

### A. Credibility Determination

Stewart argues that the ALJ's credibility determination is inadequate. The Court agrees.

As the ALJ correctly acknowledged, with regard to subjective symptoms such as pain, if a claimant has a medically determinable impairment that is reasonably expected to produce pain, then the ALJ must evaluate the credibility of the claimant's testimony regarding the extent of that pain. "In determining credibility an ALJ must consider several factors, including the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication,

4

treatment, and limitations," *see* 20 C.F.R. § 404.1529(c); S.S.R. 96-7p, and justify the finding with specific reasons. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The regulations further provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). Additionally, because the ALJ evaluates credibility by questioning and observing a live witness, not simply a cold record, an ALJ's credibility determination is reviewed deferentially and should be overturned only if it is "patently wrong." *See Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). However, "[t]he determination of credibility must contain specific reasons for the credibility finding" and "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Id.* (citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)).

Stewart testified that he had disabling pain as well as drowsiness caused by his medication. The ALJ recognized his obligation to "make a finding on the credibility of the statements based on the consideration of the entire case record," Record at 21, and concluded that Stewart's "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible." *Id.* The ALJ then gave the following reasons for that finding: 1) the medical evidence, including clinical findings, objective tests, and physicians' notes, "are not indicative of limitations preventing the claimant from performing basic work activities"; 2) the fact that, with the exception of shoulder surgery, Stewart's treatment has been "largely conservative in nature"; 3) Stewart sought treatment for a "fight,"; 4) Stewart collected unemployment insurance while applying for disability benefits; 5) Stewart continued to work for

a time in spite of his impairments; and 6) Stewart was fired from his last job and then "when he filed for unemployment, they told him to apply for disability." *Id.* at 21-23

Taking these reasons in reverse order, Stewart testified that he was fired from his job for attendance issues that were caused by his pain. *Id.* at 43. This is consistent with his allegation of disabling pain, not a reason to discredit it. Nor is the fact that he continued to work after the onset of some of his impairments indicative of a lack of credibility; it is entirely plausible that Stewart worked through the pain and other symptoms until he was unable to do so any longer and/or until his employer was unwilling to accommodate the attendance issues his impairments caused. *Cf. Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) ("[T]he ALJ reasoned that Hill was stretching the truth about her neck pain because she still wanted to work, and because she performed manual labor for many years after her neck surgery. This logic is backward: a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.") (citations omitted).

Similarly, the fact that Stewart first sought unemployment benefits rather than disability benefits is not necessarily indicative of a lack of credibility; it may simply indicate that he still viewed himself as someone who was able to (or needed to) work in spite of his impairments. "[A] claimant's *desire* to work is not inconsistent with her *inability* to work because of a disability." *Hill*, 807 F.3d at 868 (emphasis in original) (quoting *Voigt v. Colvin,* 781 F.3d 871, 876 (7th Cir.2015), for the proposition that a "claimant's desire to work, but inability to find work, is 'consistent with his wanting to lead a normal life yet being unable to land a job because he's disabled from gainful employment'"). Indeed, the fact that he was apparently told by the unemployment office (or perhaps his employer; the record is not clear and the ALJ did not inquire) that he should apply for disability benefits suggests that whatever information he gave to

the unemployment office (or whatever knowledge his employer had about his condition) was consistent with his allegations of disability.  Further, while it is true that in order to apply for and continue to receive unemployment benefits Stewart had to aver that he was able to work, which contradicts his assertion, in applying for SSI, that he is unable to work, he testified that he had a large family to support and therefore he continued to try to find a job that he could do despite his disability.  Thus, while it was not improper for the ALJ to consider Stewart's application for unemployment benefits as part of his credibility analysis, the ALJ should have also considered the reasons given by Stewart for the apparent contradiction.  *Cf. Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005).

Next, the ALJ noted that in August 2012 Stewart sought treatment for injuries he sustained in a fight and opined that the ability to engage in "active physical activity such as fighting" was inconsistent with allegations of disabling pain.  He also noted that "during that period, said fight explains contemporaneous complaints," which the Court understands to mean that the back pain he complained of at the time apparently was caused by the fight, not his impairments.  Record at 22.  However, the only evidence of record with regard to the "fight" is a notation in an emergency room record that "Pt. says he got into a fight with someone a few days ago and got hit in the lower back."[2]  *Id.* at 808-09.  It is not reasonable to extrapolate from that note alone that the "fight" involved "active physical activity" on Stewart's part; while it could have involved Stewart throwing punches, it could just as well have been a verbal confrontation that culminated in Stewart being hit in the back.  The ALJ should have asked Stewart for details about the "fight" rather than making assumptions and using them against him.  So, too, should

---

[2]The emergency room record is internally inconsistent, inasmuch as it contains the note about being hit in the back, but also states that Stewart "denies any specific injury to cause this irritation and recent symptom change." Record at 809.

7

the ALJ have inquired about the reasons why Stewart had not sought whatever less conservative treatment the ALJ thought a disabled person would have sought, as there is no medical evidence of record to support the ALJ's assumption that Stewart's treatments were not appropriate for someone experiencing disabling pain.

The ALJ's credibility determination is based, at least in part, on assumptions and inferences that are not entirely supported by the record. Remand is required to permit the ALJ to remedy these errors and make a credibility determination that is wholly supported by the record.

### B.  Arguments Related to the RFC Determination

Stewart also makes several arguments that boil down to an argument that the ALJ's RFC determination is not supported by substantial evidence because there are no medical opinions in the record regarding what his physical capabilities are. The Court agrees. As noted above, Stewart testified that he suffers from pain in his lower back, both legs and groin area, and right shoulder. He testified that the leg pain is a "stabbing pain" that is usually at the level of 6 out of 10 and that it and the back pain are present 90% of the time, while his shoulder pain comes and goes. He also testified that the medication he is taking causes drowsiness and irritability. He testified that he could lift 20 pounds, walk and stand for about 15 minutes without a break, and sit for about 15-20 minutes before needing to stand.  This testimony is not consistent with the ALJ's RFC determination that Stewart is capable of light work with some additional limitations.

With the exception of Dr. Haber's opinion, which is discussed below, the ALJ did not identify any medical evidence that contradicts Stewart's testimony about his physical limitations and supports his own RFC determination; rather, he noted that the record "does not contain any opinions from treating or examining physicians indicating that [Stewart] is disabled or that he has limitations greater than those determined in this decision." Record at 26. In that sense, this

case is similar to *Scott v. Astrue*, 647 F.3d 734, 740-41 (7th Cir. 2011), in which the Seventh Circuit held:

> The Commissioner asserts that, apart from one statement at the hearing that Scott was unable to lift more than one gallon of milk, there is no evidence that she has any limitation on her lifting ability, and the ALJ was therefore entitled to determine her RFC without reference to a more-substantial lifting restriction. It is true that Scott bears the burden of producing evidence of her impairments, *see Eichstadt v. Astrue,* 534 F.3d 663, 668 (7th Cir.2008), but she did produce evidence in the form of her own testimony as well as medical evidence that tremors make it difficult for her to use her hands. If the ALJ found this evidence insufficient, it was her responsibility to recognize the need for additional medical evaluations. *See Golembiewski v. Barnhart,* 322 F.3d 912, 918 (7th Cir.2003); *Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir.2000).

*See also Allensworth v. Colvin*, ____ F.3d ____, 2016 WL 737786 at *3 (7th Cir., Feb. 25, 2016) ("A gaping hole in the record is the absence of any evidence that the plaintiff can lift or carry weight, stand or sit for six hours in an 8–hour workday, or maintain sufficient concentration to be able to perform simple, repetitive tasks—yet without those capacities he is disabled from gainful employment. Although the administrative law judge concluded that the plaintiff can perform light work for 40 hours a week, she did not indicate what evidence supported that conclusion—a fatal error.") (citation omitted).

The ALJ did point to the fact that Dr. Haber, a pain and rehabilitation specialist who is one of Stewart's treating physicians, "reported that [Stewart] is able to work and lead a normal functioning life." Record at 26. Dr. Haber did, in fact, state the following: "In regards to [Stewart's] Oswestry Questionnaire,[3] I do not believe the patient is severely disabled. I do believe his back pain impacts his life, but not on a severe level. The patient is still able to work and lead a normal functioning life." *Id.* at 1086. It appears that Dr. Haber was considering only

---

[3]The Oswestry Questionnaire is a tool used to determine how a patient's back pain affects his ability to function.

9

the effects of Stewart's back pain, not his impairments in combination; it is also impossible to know whether Dr. Haber would agree with the ALJ's RFC determination or whether he would find Stewart more or less limited, because he was never asked those questions. Thus, without more information, Dr. Haber's opinion does not provide the requisite support for the ALJ's RFC determination.

Stewart also notes that it appears that the ALJ relied, in part, on Dr. Haber's treatment notes as supporting "more or less normal psychiatric findings." Record at 24. In the absence of any indication that Dr. Haber has expertise in psychiatry, this was error.

Also erroneous was the ALJ's failure to obtain medical evidence with regard to whether Stewart's condition equals a listing.

> Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue. *See* 20 C.F.R. § 404.1526(b) ("Medical equivalence must be based on medical findings. . . . We will also consider the medical opinion given by one or more medical or psychological consultants designated by the Commissioner in deciding medical equivalence."); S.S.R. 96–6P at 3 ("[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."), *reinstating* S.S.R. 83–19; *see Farrell v. Sullivan,* 878 F.2d 985, 990 (7th Cir.1989) (concluding that ALJ complied with requirement of Social Security Ruling 83–19 that he consider a consulting physician's opinion regarding medical equivalency).

*Barnett v. Barnhart*, 381 F.3d 664, 670-71 (7th Cir. 2004) (remanding because the ALJ failed to obtain medical evidence regarding equivalency and instead "ALJ simply assumed the absence of equivalency without any relevant discussion"). This error also should be corrected on remand. The ALJ also should address specifically the combined effect of Stewart's mental and physical impairments—including his symptoms related to neuropathy and diabetes—on his ability to sustain full-time work.

## V. <u>CONCLUSION</u>

For the reasons set forth above, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 3/17/16

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification